Charles R. SIMS, Petitioner,

v.

The INDUSTRIAL COMMISSION OF
COLORADO (Ex-Officio Unemployment
Compensation Commission of Colorado); ,
Robert J. Ore, Executive Director of the
Colorado Department of Labor and Em-
ployment; Kenneth C. Russel, Mike L.
Baca, and Richard J. Wise, Commission-
ers, and Curtis Mathis Electronics Com-
pany Incorporated, employer, Respon-
dents.

William H. ALBAITIS, Petitioner,

v.

INDUSTRIAL COMMISSION OF the
State of COLORADO (Ex-Officio Unem-
ployment Compensation Commission of
Colorado), and Colorado Department of
Labor and Employment, Respondents.

Nos. 80SC82, 80SC86.

Supreme Court of Colorado,
En Banc.

May 4, 1981.

Quiat, Bucholtz, Bull & Laff, P.C., Alan H. Bucholtz, Denver, for petitioner Sims.

William E. Benjamin, Commerce City, for Petitioner Albaitis.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Abby L. Pozefsky, David Aschkinasi, Asst. Attys. Gen., Denver, for respondents.

HODGES, Chief Justice.

We granted certiorari in these cases to review decisions of the court of appeals affirming the Industrial Commission's reduced award of unemployment benefits to claimants Sims and Albaitis. Both cases raise the same issue, and were therefore consolidated by this court for oral argument and decision. We reverse the judgment in *Sims v. Industrial Commission* (Court of Appeals No. 79CA0644, announced February 7, 1980 (Not Selected for Official Publication)), and affirm the judgment of the court of appeals in *Albaitis v. Industrial Commission*, Colo.App., 609 P.2d 1118 (1980).

The facts of the two cases are set forth separately.

### Sims v. Industrial Commission

On July 1, 1978, Charles R. Sims, then an employee of Curtis Mathis Electronics Company, Inc., was involved in an automobile accident while driving a company truck in the course of his employment, and was cited for failure to stop at a red light. He was terminated because the company's automobile insurer would no longer insure him because of his bad driving record.

He applied for unemployment benefits and was granted a reduced award pursuant to section 8–73–108(5), C.R.S. 1973 (1978 Supp.) (since amended in 1979), because his unemployment was the result of a "chargeable accident with the company vehicle." That decision was upheld after hearing by a referee and affirmed by the Commission. On appeal to the court of appeals, the reduced award was affirmed.

### Albaitis v. Industrial Commission

William H. Albaitis was employed by Codesco Dental Lab as a denture finisher until June 2, 1978 when he was fired. He filed a claim for unemployment benefits, and was granted a reduced award, pursuant to section 8–73–108(5), C.R.S. 1973 (1978 Supp.) (since amended in 1979). It was found that he had been discharged "for loafing on the job and conducting personal business during working hours."

Albaitis appealed that decision, and a hearing was held before a referee of the Colorado Division of Employment and Training. The referee found that "the claimant [Albaitis] is basically responsible for the separation," and affirmed the reduced award. The Industrial Commission (Commission) also affirmed the reduced award. Appeal was then taken to the court of appeals which affirmed.

### I.

Both claimants challenge the authority of the Commission to reduce the amount of unemployment compensation awarded them. Specifically, they argue that they are entitled to full awards unless the reasons for their separation from their jobs were included among the twenty-three reasons enumerated in section 8–73–108(5), C.R.S. 1973 (1978 Supp.) (since amended in 1979). We do not agree.

A review of the recent legislative history of section 8–73–108 is necessary to understand the issue presented by these cases. Prior to 1977, section 8–73–108 contained a subsection which provided in pertinent part:

"(6)(a) Other Considerations. If, in the administration of articles 70 to 82 of this title, the division determines that a claim for benefits is not specifically covered under other provisions of this section, the division shall grant a full award, reduced award, or special award."

Colo.Sess. Laws 1976, ch. 38, 8–73–108(6)(a) at 347.

In 1977, section 8–73–108 was substantially changed by the general Assembly, and this subsection was repealed. Colo. Sess. Laws 1977, ch. 96, 8–73–108 at 485. In addition, subsection (5) was amended to empower the Commission to confer a re-

duced award to claimants "separated from a job for the reasons enumerated in this subsection (5). . . . " Colo.Sess. Laws 1977, ch. 96, 8–73–108 at 484. The amended subsection (5) then continued, "[t]he following reasons, along with other pertinent factors, shall be considered in determining the direct and proximate cause of the separation . . . ," and it then listed twenty-three reasons for separation from employment which, if present, required that the claimant be given a reduced award. Colo.Sess. Laws 1977, ch. 96, 8–73–108 at 484–85.

Section 8–73–108 was again amended in 1979. Among other things, the General Assembly added a subsection (5)(x), Colo.Sess. Laws 1979, ch. 67, 8–73–108 at 351, expressly empowering the Commission to grant reduced awards to claimants who, for reasons other than those twenty-three enumerated in section 8–73–108(5)(a)–(w), had become separated from their jobs. Thus, the statute once again contains a provision expressly empowering the Commission to exercise discretion in granting reduced awards in those cases not specifically covered by other provisions of section 8–73–108.[1]

These cases arose in that period between 1977 and 1979 when section 8–73–108 contained no provision expressly authorizing the exercise of discretion by the Commission in granting reduced awards.

Throughout all of these changes, the statement of purpose of section 8–73–108(1), C.R.S. 1973 (1979 Supp.), remained essentially the same:

"In the granting of benefit awards, it is the intent of the general assembly that the division at all times be guided by the principle that unemployment insurance is for the benefit of persons unemployed through no fault of their own; and that each eligible individual who is unemployed through no fault of his own shall be entitled to receive a full award of benefits; and that every person has the right to leave any job for any reason, but that the circumstances of his separation shall be considered in determining the amount of benefits he may receive, and that certain acts of individuals are the direct and proximate cause of their unemployment, and such acts may result in such individuals receiving a reduced award."

■ The language in section 8–73–108(5), C.R.S. 1973, as it existed when these claims were filed and processed, provided:

"The following reasons, *along with other pertinent factors*, shall be considered in determining the direct and proximate cause of separation . . . . " (Emphasis added.)

In order for the Commission to carry out the legislative intent as expressed in sections 8–73–108(1) and (5) it must at times exercise discretion in determining whether to grant a claimant a reduced award. The intent of the General Assembly to confer such discretion on the Commission is reflected by the 1979 amendment adding subsection (5)(x) to section 8–73–108. We conclude that the Commission was empowered to grant reduced awards in these cases, although the precise reasons for the claimants' terminations were not enumerated in section 8–73–108(5)(a)–(w), C.R.S. 1973 (1978 Supp.) in effect at the time.

## II.

In each of these cases, a hearing was held before a referee, and in each case the referee entered written "Findings of Facts and Conclusions." The claimants allege that the evidence adduced at those hearings, and subsequently considered by the Commission, was insufficient to support findings that they were responsible for their own separations from employment. In the case of claimant Albaitis, we conclude that there is sufficient evidence to support the Commission's decision, but with regard to claimant Sims, the evidence before the referee was

---

1. Section 8–73–108(5)(x), C.R.S. 1973 (1979 Supp.), provides that a reduced award may be made where the claimant was separated from his job,

"For other reasons including, but not limited to, excessive tardiness or absenteeism, sleeping or loafing on the job, or failure to meet established job performance or other defined standards. . . . "

inadequate and therefore the Commission's decision, and the judgment of the court of appeals, must be reversed.

### A.

■ In the hearing concerning Albaitis' discharge, the employer's representative testified that Albaitis was fired because his production was not satisfactory.[2] The referee found that this conduct and Albaitis' on the job attitude were responsible for his separation. The Commission properly affirmed the referee's determination.

■ Responsibility for separation from employment is a determination of fact. Where, as here, there is substantial evidence in the record to support the rulings of the referee and the Commission, a reviewing court may not substitute its judgment for that of the Commission. *Sayers v. American Janitorial Service, Inc.*, 162 Colo. 292, 425 P.2d 693 (1967); *Morrison Road Bar, Inc. v. Industrial Commission*, 138 Colo. 16, 328 P.2d 1076 (1958).

### B.

■ In the *Sims* case, the referee found that Sims was discharged because,

"the employer was advised by their insurance carrier that it would be impossible for the insurance company to insure the claimant [Sims] any longer and assume for the employer any liability insurance against the claimant's continued driving for the employer."

The Commission reviewed and affirmed the reduced award on the basis of this finding.

Our review of the record reveals that the only evidence received by the referee to the effect that the employer's insurance carrier would no longer insure Sims was pure hearsay and was not substantiated by any other evidence. Specifically, Leo Pickett, service manager for the employer, testified that, in the course of telephone conversations with representatives of the insurance company, he had been told that the insurer would no longer extend coverage to Sims.[3] In addition, Pickett produced a letter, purportedly from the insurance carrier, stating that Sims would no longer be insured. That letter was not admitted into evidence, however, and is not part of the record before us. No other evidence regarding the insurer's unwillingness to cover Sims was introduced.

A hearsay statement is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." C.R.E. 801(c). Pickett's testimony relating what he was told by some insurance company employee in telephone conversations is hearsay. That testimony of Pickett was offered to establish the truth of the matter asserted, *i. e.*, that the insurer would no longer extend coverage to Sims. We can find no hearsay exception within which this testimony falls. *See* C.R.E. 803. Standing alone, this testimony cannot be used to establish the truth of the fact it purports to reveal.

■ The court of appeals in several cases has properly held that hearsay evidence alone cannot serve as the basis for a determination by the Commission. *Allen v. In-*

---

2. Ray Ike, general manager of Codesco Dental Lab, testified as follows:

"A separation occurred because Bill [Albaitis] just couldn't seem to give us a full days [sic] production, because of the—the interference apparently from his social life. There was a lot of time spent on the phone visiting with some of the other employees in the laboratory. His production wasn't up to expectations."

3. In response to questions asked by the referee, Pickett testified as follows:

"On 7–1–78, Chuck [Sims] had an accident with one of our company vehicles. He was ticketed for running a red light. I called our

insurance company . . . and they told me that already they were looking into, the insurance company was looking into Chuck's driving record, and this would probably mean that they wouldn't insure Chuck anymore, you know, as far as with our vehicles, because of his past driving record.

\* \* \* \* \* \*

So after the accident did go through, they came back to us approximately a week later, and said that the insurance company as of the first of, it would have been September, I believe, they would no longer cover Chuck for driving one of our vehicles."

*dustrial Commission*, 36 Colo.App. 330, 540 P.2d 358 (1975); *Olivas v. Industrial Commission*, 33 Colo.App. 78, 515 P.2d 110 (1973). Although there may be situations in which it is proper for hearsay testimony to be presented during a hearing before a referee, such hearsay evidence alone cannot support a determination reducing or denying an award of unemployment benefits. The decision of the Commission in the *Sims* case was not supported by sufficient evidence.

We affirm the judgment of the court of appeals upholding the Commission's reduced award to Albaitis. We reverse that court's judgment upholding the reduced award to Sims, which case is to be remanded by the court of appeals to the Commission for entry of an award in consonance with this opinion.